UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| | USDC SDNY |
| | DOCUMENT |
| | ELECTRONICALLY FILED |
| | DOC #: _____ |
| | DATE FILED:  6/15/2026___ |

In re:

ENDO INTERNATIONAL PLC, *et al.*,

              Debtors.

---

MATTHEW DUNDON, Trustee of the Endo GUC
Trust,

              Plaintiff,

    -against-

RAJIV DE SILVA, DOUGLAS S. INGRAM,
ARTHUR J. HIGGINS, NANCY J. HUTSON,
ROGER H. KIMMEL, WILLIAM P. MONTAGUE,
TODD B. SISITSKY, JILL D. SMITH, WILLIAM
F. SPENGLER, PAUL V. CAMPANELLI,
SUKETU P. UPADHYAY, KAREN A.
WALLACE, BRIAN LORTIE, ANTONIO R.
PERA, JOSEPH BARBARITE, and JOHN DOES
1–10,

              Defendants.

No. 24-cv-7464 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

In the wake of the Endo International plc ("Endo") bankruptcy, Plaintiff Matthew Dundon ("Plaintiff"), as Trustee of the Endo GUC Trust (the "GUC Trust"), commenced this adversary proceeding in the Bankruptcy Court against Defendants Rajiv De Silva, Douglas S. Ingram, Arthur J. Higgins, Nancy J. Hutson, Roger H. Kimmel, William P. Montague, Todd B. Sisitsky, Jill D. Smith, William F. Spengler, Paul V. Campanelli, Suketu P. Upadhyay, Karen A. Wallace, Brian Lortie, Antonio R. Pera, and Joseph Barbarite (together, "Defendants"), former directors and officers of Endo.  The Complaint asserts claims under Delaware and Irish law arising from Endo's

distribution, marketing, and sale of certain opioid products.  Defendants now move, pursuant to 28 U.S.C. § 157(d) and Federal Rule of Bankruptcy Procedure 5011(a), to withdraw the reference of this adversary proceeding from the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").[1]  (ECF No. 1.)

For the reasons that follow, Defendants' motion is GRANTED.

## BACKGROUND

Endo was a global pharmaceutical company that produced, among other things, opioid products.  (Defs.' Mem. at 2.)  On August 16, 2022, Endo and dozens of its subsidiaries and affiliates filed for Chapter 11 bankruptcy.  (*Id*.)  Endo's bankruptcy was precipitated, in relevant part, by "thousands of lawsuits related to its marketing and sale of prescription opioids."  (Pl. Opp. at 2.)  Those liabilities remained a central feature of the bankruptcy proceedings.  (*Id*. at 3.)  Indeed, approximately 90,000 individuals filed opioid-related proofs of claim against Endo during the Chapter 11 cases.  (*Id*.)

On March 22, 2024, the Bankruptcy Court entered an order confirming Endo's plan of reorganization (the "Plan").  (Defs.' Mem. at 2–3.)  The Plan became effective on April 23, 2024.  (*Id*. at 3.)  The Plan, in relevant part, established the "GUC Trust for the benefit of certain unsecured creditors and transferred to the GUC Trust specified causes of action previously held by Endo.  (*Id*.)  The Plan also retained jurisdiction in the Bankruptcy Court over certain post-confirmation matters.  (*Id*.)

Plaintiff, as trustee of the GUC Trust, subsequently initiated this adversary proceeding in the Bankruptcy Court on July 24, 2024, against Defendants, who served as directors and officers of Endo from 2016 to 2018.  (*Id*.)  The Complaint asserts claims under Delaware and Irish law

---

[1] The Court refers to the parties' submissions concerning the motion to withdraw the reference as follows: (1) ECF No. 4 ("Defs.' Mem."); (2) ECF No. 7 ("Pl. Opp.); and (3) ECF No. 8 ("Defs.' Reply").

against Defendants for alleged breaches of their fiduciary duties to Endo with respect to Endo's distribution, marketing, and sale of branded and generic opioids, including but not limited to a product known as "Opana ER." (Pl. Opp. at 2.) On October 2, 2024, Defendants moved to withdraw the reference pursuant to 28 U.S.C. § 157(d). (ECF No. 1.) Defendants contend that the adversary proceeding is a non-core matter involving state and foreign law claims, that the Bankruptcy Court lacks authority to enter final judgment, and that withdrawal would promote judicial economy. (*See generally* Defs.' Mem.) Plaintiff opposes withdrawal, arguing that the adversary proceeding remains closely connected to Endo's bankruptcy, that the Bankruptcy Court's familiarity with the bankruptcy proceedings favors retaining the reference through pretrial proceedings, and that withdrawal would be premature at this stage of the litigation. (*See generally* Pl. Opp.)

Shortly after briefing on the present motion was completed, Judge Garrity, who had overseen Endo's bankruptcy proceedings for more than two years, ceased presiding over the case when it was reassigned to Judge David Jones on December 6, 2024. (ECF No. 10.)

### LEGAL STANDARD

A district court "may withdraw . . . any case or proceeding referred under [28 U.S.C. § 157(d)], on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d). While the statute does not define the term "cause," the Second Circuit begins with the threshold question of whether the case involves a core or non-core proceeding, "since it is upon this issue that questions of efficiency and uniformity will turn." *See In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993). The Second Circuit then considers factors such as judicial economy, uniformity in the administration of bankruptcy law, the prevention of forum shopping, and jury trial considerations. *Id*. "Whether a dispute is legal or equitable in nature and consequently

3

whether the litigants are afforded the right to a jury trial is another consideration in determining whether the reference should be withdrawn." *McHale v. Citibank, N.A.*, 2009 WL 2599749, at *4 (S.D.N.Y. Aug. 24, 2009). In cases where withdrawal is not mandatory, "[t]he moving party bears the burden of demonstrating that permissive withdrawal of the reference is warranted." *In re Lehman Brothers Holdings Inc.*, 18 F. Supp. 3d 553, 557 (S.D.N.Y. 2014).

With that said, however, the Supreme Court has held that a United States Bankruptcy Court may not enter final judgment on certain claims otherwise characterized as core under 28 U.S.C. § 157. *See Stern v. Marshall*, 564 U.S. 462, 487–99, 502 (2011). "Under *Stern*, it is not the core/non-core distinction but Article III that determines the bankruptcy court's adjudicative authority." *In re Lyondell Chemical Co.*, 467 B.R. 712, 719 (S.D.N.Y. 2012). Nevertheless, in the context of motions to withdraw the reference, district courts in this Circuit have continued to apply the *Orion* framework notwithstanding *Stern*. *See In re Lehman Bros. Holdings Inc.*, 2014 WL 1877937, at *3 n.1. Indeed, bankruptcy courts "may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11," and may "submit proposed findings of fact and conclusions of law to the district court." 28 U.S.C. § 157(c)(1); *see also Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 34 (2014). "The district court must then review those proposed findings and conclusions *de novo* and enter any final orders or judgments." *Arkison*, 573 U.S. at 34.

## DISCUSSION

Defendants argue that withdrawal is warranted because (1) withdrawal is mandatory in light of the Bankruptcy Court's lack of final adjudicative authority and Defendants' right to a jury trial, and (2) considerations of judicial economy and efficiency favor immediate withdrawal. (*See generally* Defs.' Mem.) Plaintiff responds that withdrawal is neither mandatory nor warranted under the *Orion* factors. (*See generally* Pl. Opp.) The Court addresses each argument in turn.

## I. Withdrawal Is Not Mandatory

Defendants first argue that withdrawal is mandatory under Article III of the Constitution.[2] (Defs.' Mem. at 3–5.) Specifically, Defendants contend that withdrawal is mandatory because the Bankruptcy Court lacks constitutional authority to (1) finally adjudicate this non-core suit and (2) conduct a jury trial in this matter. (*Id*. at 3–4.) The Court, however, is not persuaded.

As explained above, "[a] determination that a Bankruptcy Court does not have final adjudicative authority over a claim does not mean that the reference must be withdrawn." *In re Iannacchino*, 2018 WL 1009279, at *2 (S.D.N.Y. Feb. 20, 2018). This principle applies even where the claims at issue are non-core, as both parties contend they are here. (Defs.' Mem, at 4; Pl. Opp. at 7.) Indeed, the Supreme Court has explained that, with respect to "non-core proceedings . . . [t]he bankruptcy court may hear [the] proceeding and submit proposed findings of fact and conclusions of law to the district court." *Arkison*, 573 U.S. at 34 (internal quotations omitted). The fact that a district court "will be required to oversee this case at some point in time because the Bankruptcy Court lacks authority to issue a final decision," (Defs.' Mem. at 4), does not render withdrawal mandatory. Rather, the district court may "review those proposed findings and conclusions *de novo* and enter any final orders or judgments." *Arkison*, 573 U.S. at 34. This framework has been widely applied by courts in this district. *See, e.g.*, *SecurityNational Mortg. Co. v. Lehman Bros. Holdings Inc.*, 2020 WL 9815257, at *18 (S.D.N.Y. July 10, 2020) (when a bankruptcy court lacks authority to enter final judgment, the "proper course is to issue proposed

---

[2] Plaintiff correctly notes that Defendants cannot seek mandatory withdrawal under 28 U.S.C. § 157(d). (*See* Pl. Opp. at 5–6.) The statute provides for mandatory withdrawal only where a district court "determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d). Defendants, however, concede that this action does not implicate either federal or bankruptcy law. (Defs.' Mem. at 1, 6, 8.) The Court therefore construes Defendants' motion as asserting, consistent with their reply memorandum, that withdrawal is required because the Bankruptcy Court lacks constitutional authority to finally adjudicate this non-core suit or conduct a jury trial in this matter. (*Id*. at 3; Defs.' Reply at 1.)

findings of fact and conclusions of law" that the "district court will then review . . . *de novo* and enter judgment"); *In re Bernard L. Madoff Inv. Sec. LLC*, 612 B.R. 257, 263 (S.D.N.Y. 2020) (same); *In re Sheldrake Lofts LLC*, 2014 WL 6450340, at *2 (S.D.N.Y. Nov. 15, 2014) (same).

The Court likewise is not persuaded by Defendants' argument that withdrawal is mandatory because they possess a Seventh Amendment right to a jury trial. (Defs.' Mem. at 3–4.) None of the cases cited by Defendants stand for the proposition that the existence of a jury-trial right requires immediate withdrawal of the reference. *See Pereira v. Farace*, 413 F.3d 330, 340–41 (2d Cir. 2005) (addressing a party's entitlement to a jury trial rather than the propriety of withdrawing the reference); *In re Rickel & Assocs.*, 320 B.R. 513, 516–17 (S.D.N.Y. 2005) (addressing whether a jury-trial right exists); *In re Iannacchino*, 2018 WL 1009279, at *3 (considering a party's jury demand as part of the *Orion* analysis). The Court therefore concludes that the Bankruptcy Court's inability to enter a final judgment, or conduct a jury trial in this matter, does not, standing alone, require immediate withdrawal of the reference.

## II.  Permissive Withdrawal

The Court turns to consider whether withdrawal is permissive. As explained above, district courts in this Circuit adhere to the framework set forth in *Orion*, beginning with the threshold question of whether the proceeding is core or non-core. *See In re Orion Pictures Corp.*, 4 F.3d at 1101. Once that determination is made, district courts consider factors such as judicial economy, uniformity in the administration of bankruptcy law, the prevention of forum shopping, and jury-trial considerations. *Id.*; *see also McHale*, 2009 WL 2599749, at *4. The Court addresses each factor in turn.

### A.  Core/Non-Core Determination

6

The *Orion* framework begins with the threshold question of whether the case involves a core or non-core proceeding. *See In re Orion Pictures Corp.*, 4 F.3d at 1101. Here, Plaintiff concedes that this adversary proceeding concerns non-core claims. (Pl. Opp. at 7.) In any event, while "the core/non-core determination is an important factor," courts have "repeatedly emphasized that this factor is not dispositive of a motion to withdraw a reference." *In re Ne. Indus. Dev. Corp.*, 511 B.R. 51, 53 (S.D.N.Y. 2014) (collecting cases). The Court must consider the non-core nature of Plaintiff's claims as part of the broader *Orion* framework. That said, because the Bankruptcy Court lacks authority to enter final judgment on the claims at issue, this factor weighs in favor of withdrawal. *See Dynegy Danskammer, L.L.C. v. Peabody COALTRADE Int'l Ltd.*, 905 F. Supp. 2d 526, 533 (S.D.N.Y. 2012) (acknowledging that "if a district court must review recommendations *de novo* . . . it would be inefficient to allow the[ ] proceedings to go forward, knowing that they will have to be substantially repeated"); *see also Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 462 B.R. 457, 469 (S.D.N.Y. 2011) (same).

### B. Judicial and Party Economy

Turning to judicial economy, Defendants argue that judicial economy favors withdrawal because this case involves only non-core claims arising under Delaware and Irish law, the Bankruptcy Court lacks authority to enter final judgment, and the District Court will ultimately be required to review any proposed findings and conclusions *de novo*. (Defs. Mem. at 5–7.) Defendants likewise contend that the Bankruptcy Court possesses no particular expertise with respect to the fiduciary-duty claims at issue and that the case remains in its infancy. (*Id*. at 7.) In response, Plaintiff largely contends that withdrawing this action would be inefficient because Judge Garrity—who oversaw the Endo bankruptcy proceedings for more than two years— developed substantial familiarity with Endo's operations, the opioid-related liabilities that

7

contributed to the bankruptcy, and the Plan that created the GUC Trust. (Pl. Opp at 8–14.) As a result, Plaintiff concludes that the Bankruptcy Court is best positioned to supervise pretrial proceedings in this matter. (*Id.*)

With that said, the underlying bankruptcy proceeding was reassigned to Judge Jones shortly after briefing on the present motion was completed. (ECF No. 10.) This development substantially diminishes the force of Plaintiff's judicial economy arguments, which rely heavily on Judge Garrity's extensive familiarity with Endo's bankruptcy proceedings. Even so, this action remains in its early stages. The pending motion to dismiss remains undecided,[3] the parties have not yet commenced discovery, and no case management plan or other course of proceedings has been established. *See Dundon v. De Silva et al.*, Adv. Pro. No. 24-7022 (Bankr. S.D.N.Y.). The Court is not persuaded that withdrawal at this stage will impose meaningful additional costs or delay upon the parties. *See In re Celsius Network LLC*, 670 B.R. 379, 393 (S.D.N.Y. 2025) (dismissing concerns about judicial economy because no discovery had occurred and dispositive motions remained pending); *Dev. Specialists*, 462 B.R. at 472 ("[A]s no discovery has taken place, and no case management plan or other course of proceeding has been agreed on, bringing the actions before this Court will not cause undue delay or require any duplication of effort."). Nor do certain claims asserted here—arising under Irish corporate law—involve matters as to which the Bankruptcy Court possesses "specialized familiarity of or experience," such that "withdrawing the reference will avoid the duplication of effort in resolving the case and is therefore a more efficient use of judicial resources." *In re Empire State Grp., LLC*, 2024 WL 3666381, at \*7 (S.D.N.Y. Aug. 5, 2024). Finally, although Plaintiff's claims were transferred to the GUC Trust pursuant to the

---

[3] As reflected in the parties' May 29, 2026 status update to the Court, Defendants filed a motion to dismiss the Complaint in the Bankruptcy Court. (ECF No. 13.) It is the Court's understanding that the motion remains pending before Judge Jones. (*Id.*)

Plan, the litigation concerns alleged prepetition conduct by Defendants occurring years before Endo sought bankruptcy protection. (Defs.' Mem. at 7.) Taken together, these considerations persuade the Court that judicial economy favors withdrawal of the reference.

### C. Uniformity

The Court next considers the uniformity factor. This factor encompasses both (1) "the uniform administration of bankruptcy law" and (2) "intra-case uniformity." *Roman Cath. Diocese of Rockville Ctr., New York v. Arrowood Indem. Co.*, 2021 WL 1978560, at *10 (S.D.N.Y. May 17, 2021) (citing *Dynegy Danskammer*, 905 F. Supp. 2d at 529). With respect to the uniform administration of bankruptcy law, this factor is considered neutral where, as here, the "claims at issue are non-core claims that do not arise under bankruptcy law." *Id*.

As for intra-case uniformity, district courts have found that "uniformity is clearly served by leaving similar, related disputes in the hands of a single court." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 2023 WL 6122905, at *8 (S.D.N.Y. Sept. 18, 2023) (cleaned-up). With that said, the Court finds that this consideration carries limited weight. Although Plaintiff's claims were transferred to the GUC Trust pursuant to the Plan, this adversary proceeding concerns non-core claims arising under Delaware and Irish law based on Defendants' alleged prepetition conduct. (Pl. Opp. at 2.) Where a case concerns "pre-petition claims," as is the case here, district courts tend to find that such claims "have at best an attenuated relationship to the underlying bankruptcy proceeding, related adversary proceedings, or traditional bankruptcy matters." *In re Celsius Network*, 670 B.R. at 395. At the same time, however, Plaintiff correctly notes that the claims at issue were transferred to the GUC Trust pursuant to the Plan and are being prosecuted for the benefit of creditors. (Pl. Opp at 4, 15–16.) Retaining the reference would promote some degree of intra-case uniformity by keeping a dispute arising from the implementation of the Plan

9

before the same court overseeing the post-confirmation bankruptcy proceedings.[4]  Because these competing considerations largely offset one another, the Court concludes that this factor is neutral.

### D.  Jury Trial Right

The next consideration is Defendants' right to a jury trial.  Specifically, Defendants argue that they are entitled to a jury trial because Plaintiff's sought remedy is legal in nature, *i.e.*, money damages, which entitles the parties to a Seventh Amendment jury trial.  (Defs.' Mem. at 4.)  As acknowledged by Plaintiff, however, Defendants have yet to file a jury demand.  (Pl. Opp. at 14–15.)  Instead, Defendants contend that they intend to request a jury trial with their answer to the Complaint.  (Defs.' Reply at 2 n.1.)  Regardless of whether Defendants have filed a jury demand, this factor is not dispositive.  To the contrary, when a case "is in its early stages and is far from trial ready . . . and discovery is not complete," district courts do "not attach much weight to this factor . . . because it is unclear whether the case will in fact proceed to a jury trial."  *In re Celsius Network*, 670 B.R. at 395 (quoting *Diocese of Rockville Centre*, 2021 WL 1978560, at *11).  The Court therefore affords this factor limited weight.

### E.  Forum Shopping

Finally, the Court finds that forum-shopping concerns do not materially affect the analysis.  As Plaintiff acknowledges, Defendants sought to withdraw the reference at the "earliest of procedure moments."  (Pl. Opp. at 16.)  As discussed above, the case is in its early stages, the Complaint contains non-core claims arising under Delaware and Irish law, no discovery has taken place, the Bankruptcy Court has not issued any substantive decisions, and this motion to withdraw

---

[4] Plaintiff similarly asserts that the Plan retains jurisdiction over certain post-confirmation matters.  (Pl. Opp. at 4, 15–16.)  But the existence of a retention-of-jurisdiction provision does not alter the non-core nature of the claims asserted here or otherwise require that this adversary proceeding remain before the Bankruptcy Court.  A party may only "invoke the authority of the bankruptcy court to exercise post confirmation jurisdiction if the matter has a close nexus to the bankruptcy plan."  *In re DPH Holdings Corp.*, 448 F. App'x 134, 137 (2d Cir. 2011).  That is not the case here.

was filed even before the pending motion to dismiss was fully briefed. *See Dundon v. De Silva et al.*, Adv. Pro. No. 24-7022 (Bankr. S.D.N.Y.). Notwithstanding Plaintiff's protestations to the contrary, "[t]here is no indication that [Defendants] were engaged in forum shopping 'as opposed to a genuine desire for more efficient adjudication.'" *In re Empire State Grp.*, 2024 WL 3666381, at *8 (quoting *Dynegy Danskammer*, 905 F. Supp. 2d at 533). The Court therefore concludes that this factor is neutral.

*       *       *

Having considered the *Orion* factors, the Court concludes that permissive withdrawal of the reference is warranted. Although the uniformity and forum-shopping factors are neutral, the Court finds that the non-core nature of Plaintiff's claims and considerations of judicial economy weigh in favor of withdrawal. The Court further concludes that Defendants' asserted right to a jury trial, while entitled to limited weight at this stage of the litigation, likewise supports withdrawal. Under these circumstances, Defendants have met their burden of demonstrating cause for permissive withdrawal under 28 U.S.C. § 157(d).

## CONCLUSION

For the foregoing reasons, Defendants' motion to withdraw the reference is GRANTED. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 1.

SO ORDERED.

Dated: June 15, 2026
      White Plains, NY

_____
Nelson S. Román, U.S.D.J.

11